UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------  X
                                               :

UNITED STATES OF AMERICA,            :    **MEMORANDUM DECISION AND ORDER**

                                   :

            - against -              :    20-cr-239 (BMC)

                                   :

MOELEEK HARRELL,                 :

                      Defendant.   :
-------------------------------------------------------------  X

**COGAN**, District Judge.

A month before his sentencing, defendant Moeleek Harrell requested, and the Court so-ordered, issuance of two subpoenas *duces tecum*: one to the Public Defender's Office in Bridgeport, Connecticut and the other to the Bridgeport Police Department.  Harrell's subpoenas seek information relating to a gun recovered from Rondell Wells on August 16, 2018, after Wells allegedly attempted to shoot a Bridgeport police officer.  The Government presented that gun at trial and proffered ballistics evidence that the gun was used in the King and Stukes shootings.  Harrell was ultimately convicted of conspiracy to commit murder in-aid-of-racketeering for both the King and Stukes shootings.

Despite proffering substantial evidence about Harrell's role in the shootings, the Government never connected Wells to Harrell or the Bully Gang or showed how the gun got from Harrell to Wells; indeed, Harrell previously challenged his conviction for the King and Stukes shootings (though unsuccessfully) on those grounds.  This is where Harrell's subpoenas come into play.  Harrell wants information about the gun from the Bridgeport Public Defender's Office and Police Department (1) to counter any argument by the Government at sentencing that

Harrell gave the gun to Wells or that Harrell has added culpability by doing so, and (2) to call into doubt or otherwise diminish his responsibility for the King and Stukes shootings.

Kelly Billings, Esq., who was Wells's defense lawyer in his state court case, has moved to quash the subpoena issued to her, and the Government has moved to quash both subpoenas. On the Government's motion, the Court stayed compliance with the subpoenas pending further order.  For the reasons set forth below, the Court grants the motions to quash on the grounds of relevance.

## BACKGROUND

In June 2024, Harrell was convicted of racketeering and related crimes, and in September 2024, Harrell moved to vacate his conviction.  Relevant to the matter presently before the Court, Harrell challenged the sufficiency of the evidence on which the jury relied to convict him for the King and Stukes shootings.  In particular, Harrell argued that the Government "undermined its own case" by showing that the gun used in the shootings was recovered from Wells, "a person with no known, much less proven, associations with Harrell or the Bully Gang."  Harrell concluded that the Government's "utter failure to explain how Wells fits into the case [was] too large a flaw for this Court to ignore."

The Court denied Harrell's motion to vacate in its entirety.  With respect to the King and Stukes charges, the Court found that the record was "self-explanatory," and Harrell's responses to it were "paltry."  Although the Court acknowledged that Harrell's argument regarding Wells had some intuitive appeal, it didn't change the Court's decision:

> The strongest argument ... is Harrell's point that the government never established a connection between him and Rond[ell] Wells, the person from whom law enforcement recovered the gun used in the shootings.  But I cannot conclude that the jury's verdict was against the weight of the evidence, and by extension that the evidence was insufficient to support a conviction, merely because the government did not prove its case in a particular way.  Sure, its case might have been stronger had it explained precisely how Wells came into possession of the

2

gun.  But it was under no obligation to introduce such proof.  Indeed, the government tied Harrell to the weapon in a different manner; it presented a photograph, recovered from Harrell's phone, of his then-girlfriend holding the gun.  Alongside the voluminous evidence connecting Harrell to the shooting, the government's showing was more than sufficient to go to the jury.[1]

The "voluminous" evidence connecting Harrell to the King and Stukes shootings – the evidence on which the jury convicted – was GPS tracking information associated with the car used in some of the shootings; cell site analysis showing Harrell's phone going to and from some of the shootings; license plate reader records showing Harrell's car going to and from some of the shootings; videos of the shootings showing the relevant cars and locations; text messages between Harrell and his co-conspirators about the shootings and the intended targets of the shootings; recorded phone calls in which the Harrell talked about some of the shootings; and DNA from Harrell's sweatshirt at the scene of one of the shootings.

After denying Harrell's motion to vacate, the Court moved forward with scheduling sentencing.  Harrell's sentencing was originally set for May 8, 2025, but, due to numerous continuances, is now set for March 11, 2026.

Probation filed its presentence investigation report ("PSR") for Harrell on June 23, 2025, and recommended a cumulative sentence of life imprisonment, plus two ten-year terms of imprisonment, followed by five years of supervised release.  Harrell's foothold for the instant subpoenas is paragraph 66 of the PSR, which states:

> The Bully Gang violently targeted the rival "Stukes Crew," which included rival Christopher Stukes and brother Anthony Stukes. ... The campaign also included three shootings perpetrated by Ayers and Moeleek Harrell on behalf of the gang on October 1, 2017, June 26, 2018, and June 27, 2018. Shell casings recovered from the scenes of all four shootings—the two on October 1, 2017, and the two on June 26 and 27, 2018—were fired from the same gun: a Smith & Wesson .40 caliber Springfield Armory firearm, with a green frame. Though recovered in

---

[1] The Court was addressing Harrell's challenges to the King charges in this paragraph.  But the Court's reasoning equally applied to Harrell's challenges to the Stukes charges, where the Court noted, "Like with the Chris King shooting, this evidence speaks for itself."

Connecticut later in the summer of 2018, the gun was captured in an earlier photograph carried in the waistband of Nehemie Eril, Harrell's girlfriend at the time.

Harrell objected to paragraph 66 of the PSR because it did not mention Wells or the perceived holes in the Government's case.  Harrell thus offered the following revised paragraph 66 in his sentencing memorandum:

> Shell casings from the two October 1, 2017, shootings, and the two on June 26 and 27, 2018 were fired from the same gun: a Smith and Wesson .40 caliber XD40 Springfield Armory firearm which was recovered from Rondell Wells on August 16, 2018, after Rondell Wells fired a shot at Bridge Port Police Officers in Connecticut. At trial, no one testified when the photograph of Nehemie Eril was taken to see whether that firearm was the same one. The ballistic evidence from the Rondell Wells Connecticut shooting was not compared to the four case shootings. Rondell Wells was sentenced to 12 years for shooting at the police with the firearm within two months of the last Brooklyn shooting.

In the Government's sentencing memorandum, it countered that Wells's behavior was irrelevant to Harrell's sentence and argued that the Court "should reject [Harrell's] attempts to shift focus to others."  It added that no testimony was needed regarding the date of the photograph showing Harrell's girlfriend holding the gun used in the four shootings because records from Harrell's phone showed that the photograph was taken on December 20, 2017.

On February 9, 2026, Harrell requested issuance of subpoenas to the Bridgeport Public Defender's Office and Police Department.  The Court so-ordered the subpoenas, which Billings and the Government have now moved to quash.

## DISCUSSION

### I.      Legal Standard

Rule 17(c)(1) of the Federal Rules of Criminal Procedure provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates," and that "[t]he court may direct the witness to produce the designated

4

items in court before trial or before they are to be offered in evidence."[2]  A party seeking

documents through subpoenas issued pursuant to Rule 17(c) has the burden of showing "(1) that

the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably

in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for

trial without such production and inspection in advance of trial and that the failure to obtain such

inspection may tend unreasonably to delay the trial; and (4) that the application is made in good

faith and is not intended as a general 'fishing expedition.'"  United States v. Nixon, 418 U.S.

683, 699-700 (1974).  Summarized, these requirements are "(1) relevancy; (2) admissibility; (3)

specificity."  Id. at 700.

"On motion made promptly, the court may quash or modify the subpoena if compliance

would be unreasonable or oppressive," Fed. R. Crim. P. 17(c)(2) – that is, if the subpoena does

not satisfy the Nixon requirements.

## II.    Analysis

Harrell sought issuance of the subpoenas because he was concerned that the Government

would argue at sentencing that Harrell gave the gun to Wells and that Harrell has added

culpability because he gave a criminal a gun that was used to shoot at a police officer.  Harrell

repeats this argument in his opposition to Billings's motion to quash:

> At trial, the Government was content to leave ... Wells' acquisition of the gun
> unexplained. At sentencing, however, the government now claims that Harrell
> gave the gun to Wells. It thus appears that the government will ask this Court to
> infer not only that the gun belonged to Harrell at the time of the Stukes and King
> shootings but that afterward, he disposed of it by giving it to another criminal who
> then used it in an attempted murder of a law enforcement officer, and that this too
> should be held to his account. The history of the gun, and the existence or

---

[2] Although the cited cases relate to pretrial subpoenas, the same analysis is required when a defendant seeks document relating to a post-trial hearing.  See United States v. Conway, 615 Fed. App'x 46, 48, 48 n.1 (2d Cir. 2015) (defendant sought documents in advance of Fatico hearing).

nonexistence of a connection between Harrell and Wells, has thus acquired added relevance even beyond its relevance at trial

For what it's worth, the Government never intended to mention Wells at sentencing at all; it was Harrell who sought to add references to Wells in the PSR and who made arguments about Wells in his own sentencing memorandum. But more importantly, the Government has dispelled the concerns motivating Harrell's subpoenas. In the Government's motion to quash, it says, in no uncertain terms, that it "is not planning to ask the Court to make an inference that [Harrell] bears any responsibility for Wells's use of the King/Stukes gun to shoot at police in Connecticut months later," that it "will not ask the Court to draw any conclusions regarding how the gun went from [Harrell] to Wells," and that it will not ask the Court "to rely on any materials about Wells or the gun which are not already in [Harrell's] possession." The Government's representations obviate the need for the subpoenas, thus rendering any subpoenaed documents irrelevant.

Harrell changes course in his opposition to the Government's motion to quash, arguing that "this does not end the matter." While recognizing that the jury convicted him of the King and Stukes shootings, Harrell argues that "the degree of his culpability is still in question," and says that the Court "must decide whether [he] had a leading role in these shootings or whether his role was more peripheral – an issue relevant both to whether to impose a role enhancement and to the Section 3553(a) calculus in general."

Harrell is right on one point: his leadership role in the King and Stukes shootings could affect his sentence. For the conspiracy to commit murder in-aid-of-racketeering charge groups for the King and Stukes shootings, Probation recommends a four-point enhancement for Harrell's role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."

6

But Harrell is wrong that the information he seeks with his subpoenas would have any impact on the Court's determination of his leadership role in the King and Stukes shootings. "[I]t is well settled that a guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict." United States v. Martinez, 110 F.4th 160, 174 (2d Cir. 2024) (internal quotations omitted). The facts implicit in the verdict, summarized above and detailed in the Court's Memorandum Decision and Order denying Harrell's motion to vacate, counsel only one conclusion: Harrell (with Ayers) orchestrated the shootings. The Court will certainly consider the fact that the Government did not draw a through line from Harrell to Wells or show how the gun got from one to the other, but it won't matter. The Court already found that the Government tied Harrell to the gun through the photograph on his phone of his then-girlfriend holding the gun.

## CONCLUSION

Harrell faces substantial prison time. The King and Stukes charges are part of the sentencing calculus, to be sure, but comprise such a comparatively small factor that the Court has to wonder why Harrell is so focused on them. It has become quite clear to the Court that Harrell is trying to relitigate the King and Stukes charges at sentencing, or to otherwise raise enough doubt for an eventual appeal. In any event, the subpoenas do not seek relevant information at this stage, so they are quashed.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
        March 2, 2026

7